UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY R. SCHLAGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18 CV 1 RWS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income. Because the Commissioner's decision is supported by substantial evidence on the record as a whole, I will affirm the Commissioner's decision.

### **Procedural History**

On August 19, 2014, Plaintiff Kimberly Schlager filed an application for Disability Insurance Benefits and Supplemental Security Income (SSI) pursuant to Titles II and XVI, 42 U.S.C. §§ 401 et seq. and 1381 et seq. These claims were initially denied on March 5, 2015. Schlager filed a written request for hearing on March 25, 2015. Schlager alleged an onset date of February 3, 2015, and a

disability based on low back disc herniation with radiculopathy, diffuse myofascial pain, headaches, panic attacks, and depression. (Tr. 224).

After a hearing, an ALJ denied Schlager's application on March 10, 2017. The Appeals Council denied Schlager's request for review on November 7, 2017. Schlager filed a complaint in this Court on January 1, 2018.

In this action for judicial review, Schlager argues that the ALJ erred in failing to fully and fairly develop the record supporting denial and failing to properly consider her residual functional capacity (RFC). Schlager asks that I reverse the Commissioner's final decision and remand the matter for further consideration. For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Schlager's recitation of facts set forth in her Statement of Undisputed Material Facts (ECF No. 20) to the extent they are admitted by the Commissioner (ECF No. 25-1).[1] I also adopt the additional facts set forth in the Commissioner's Statement of Additional Material Facts (ECF No. 25-2), as they are unrefuted by Schlager. Additional specific facts will be discussed as needed to address the

---

[1] The Commissioner makes four clarifications that (1) "Kim Dickherber, a nurse practitioner, treated plaintiff" on January 7, 2015, (ECF No. 25-1 at ¶ 3), (2) "Plaintiff denied insomnia," on March 3, 2015, (Id. at ¶ 6), (3), "although she alleged difficulty initiating sleep, Plaintiff denied insomnia," on April 30, 2015, (Id. at ¶ 9)" and (4), "although she alleged difficulty initiating sleep, Plaintiff denied insomnia," on December 9, 2015, (Id. at ¶ 21).

2

parties' arguments.

## Legal Standards

To be entitled to disability benefits, a claimant must prove that she is unable to perform any substantial gainful activity due to a medically-determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(a). To determine whether claimants are disabled, the Commissioner evaluates their claims through five sequential steps. 20. C.F.R. § 404.1520; Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) (describing the five-step process).

Steps one through three require that the claimant prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Step four (4) requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work. Id. at § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her past relevant work. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to past relevant work, the burden shifts to the

3

Commissioner at step five to show the claimant retains the residual functioning capacity (RFC) to perform other jobs that exist in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ is required to evaluate the credibility of a claimant's testimony, including the claimant's subjective complaints of pain. Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). In so doing, the ALJ is not permitted to ignore the claimant's testimony even if it is inconsistent with objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). After considering the claimant's testimony, the ALJ may disbelieve that testimony, if it is inconsistent with the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). To properly evaluate the claimant's subjective complaints, the ALJ must consider the factors enumerated in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984):

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322. While the ALJ must consider the Polaski factors, she need not enumerate them specifically. Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010). When the ALJ explicitly disbelieves the claimant's testimony and gives good reasons for such disbelief, a reviewing court will typically defer to the

4

ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility to develop the record fully and fairly in the course of the non-adversarial administrative hearing. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

In reviewing the ALJ's denial of Social Security disability benefits, my role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, I must consider evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, I may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because I would have decided the case differently. See Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). I must "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (internal citation omitted).

**The ALJ's Decision**

The ALJ first found that Schlager met the insured-status requirements of the Social Security Act through March 31, 2017. (Tr. 12). The ALJ found that Schlager had not engaged in substantial gainful activity since her alleged onset date of February 3, 2015. (Tr. 12). The ALJ also determined that Schlager suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine, acromioclavicular arthrosis and subacromial impingement of the left shoulder, seronegative rheumatoid arthritis, fibromyalgia, obesity, major depressive disorder, generalized anxiety disorder, and panic disorder. (Tr. 13). The ALJ did not find Schlager's alleged hypothyroidism, asthma, allergic rhinitis, irritable bowel syndrome, gastroesophageal reflux disease, migraine headaches, plantar fasciitis, left ovarian cyst, alleged ureterocele, and alleged manic depression or biopolar disorder to be severe impairments. (Tr. 13-16). The ALJ determined that Schlager did not have an impairment or a combination of impairments that equates to one of the listings denominated in 20 CFR 404, Subpt. P, App. 1. (Tr. 16-21).

Next, the ALJ determined that Schlager retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a). According to the ALJ, Schlager can

> occasionally stoop, crouch, and climb ramps and stairs; . . . can occasionally reach overhead with her left upper extremity; can

> frequently use her bilateral upper extremities for handling and
> fingering; . . . and is capable of performing simple, routine tasks in an
> environment where there are only occasional workplace changes and
> where contact with the general public is occasional.

(Tr. 21).

The ALJ also determined that Schlager

> should never kneel, crawl, or climb ladders, ropes, or scaffolds; . . .
> can have only occasional exposure to vibration as well as to extremes
> of cold and heat; should have no exposure to hazards such as
> unprotected heights and dangerous machinery; would need to alternate
> between sitting and standing every 30 minutes for one to three
> minutes, but would remain on task at the work station while doing so.

(Tr. 21).

Based on this RFC determination, the ALJ found that Schlager is unable to perform any past relevant work. (Tr. 35). The ALJ considered Schlager's RFC, age, education, work experience, and the Medical Vocational Guidelines to determine Schlager could make a successful adjustment to other work. (Tr. 35-26). The ALJ consulted a vocational expert (VE) who identified the following jobs as representative occupations within Schlager's RFC: addresser, document preparer, and tube operator. (Tr. 36). These jobs are categorized as "sedentary exertional, unskilled occupation[s] with a SVP rating of 2." (Tr. 36). The VE identified 6,131 addresser jobs, 46,532 document preparer jobs, and 3,134 tube operator jobs nationally. (Tr. 36). The ALJ therefore determined that Schlager was not disabled within the meaning of the Social Security Act. (Tr. 36).

**Discussion**

A.   ALJ's Duty to Develop the Record

First, Schlager argues that the ALJ did not fully and fairly develop the record necessary to support her denial. According to Schlager, the record does not contain medical evidence addressing her ability to function in the workplace, or otherwise supporting the RFC assessment, during the period of disability. For example, Schlager argues that Dr. Raymond Leung, who conducted a physical consultative examination on behalf of the state, should have provided an opinion on her ability to function in the workplace. (Brief in support of complaint, ECF No. 19 at 4). Schlager cites other medical records demonstrating the severe impairments she suffers from. (ECF No. 19 at 5-6 (left shoulder subacromial decompression, fibromyalgia, tenderness and palpitation in Schlager's shoulder and spine, and invertebral disk disorders)). She argues that these impairments require the ALJ to identify a medical opinion specifically determining her ability to function in the workplace. (Id. at 4).

An ALJ has a duty to fairly develop the record if a crucial issue is underdeveloped. See Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006); Garza v. Barnhart, 397 F.3d 1087, 1089-90 (8th Cir. 2005) (per curiam). However, an ALJ "is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." Jones v. Astrue, 619 F.3d 963,

8

969 (8th Cir. 2010) (citations omitted). Further, a "claimaint's failure to provide medical evidence . . . should not be held against the ALJ when there *is* medical evidence that support's the ALJ's decision." Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (emphasis in original). When "the medical evidence is 'silent' with regard to work-related restrictions" the fault is not necessary the ALJ's. Id. In Steed, for example, the claimant provided diagnostic tests showing actual disc herniation or bulging, but they were tempered by findings of "mild" or "minimal" effects. Id. at 875. Based on that and other evidence, the ALJ denied the claim, and the district court affirmed. The Eighth Circuit affirmed as well, noting that the "mild" and "minimal" nature of injuries supported the ALJ's RFC determination. Id. at 875-76.

  The ALJ in this matter similarly supported her RFC determination on medical evidence demonstrating limited impairments. The ALJ also described the basis of her decision at length, (Tr. 21-35), including ample citation to the medical evidence, full explanations for the weight given to doctors' opinions, (Tr. 27-32), and a detailed explanation of the credibility assessed to Schlager's subjective complaints, (Tr. 32-35). When discussing Schlager's degenerative disc disease, the ALJ cited medical records showing minor disc bulging and mild disc space narrowing with posterior protrusion. (Tr. 22, 472). Those records also showed no stenosis for the lumbar spine and no stenosis and no evidence of spondylolisthesis

for the cervical spine. (Tr. 23, 322, 470, 721); see Steed v. Astrue, 524 F.3d at 875 (no stenosis supporting ALJ's denial). When discussing Schlager's left shoulder, the ALJ cited medical records showing mild tendinosis and mildly downsloping acromion, but no rotator cuff or labral tears, (Tr. 24, 402, 432), and minimal degenerative changes, (Tr. 24, 427). When discussing Schlager's seronegative rheumatoid arthritis (RA), the ALJ cited medical records showing minor arthritic changes, isolated swelling of some finger joints and no erosive changes. (Tr. 25-26, 474, 506-07). The ALJ used this evidence to determine that Schlager's impairments were not as limiting as she alleged, based on a well-considered and fully-developed record.

The ALJ provided additional, detailed explanations citing medical evidence to support her other conclusions. (Tr. 26 (fibromyalgia and fatigue were not as limiting as alleged); 27 (anxiety, depressed mood, and concentration challenges were not totally disabling); 32-35 (Schlager's subjective complaints of pain and fatigue were contradicted by inconsistent statements). To support her conclusion that Schlager's subjective complaints were contradicted, the ALJ identified evidence that plaintiff "consistently exhibited normal gait without an assistive device" despite her alleged limited ability to walk. (Tr. 32, e.g., 394, 515, 521, 524, 527, 580-81, 588). The ALJ also noted that Schlager's "treatment providers . . . have not advised her to abstain from any activities . . . except immediately after

10

shoulder surgery," despite her alleged limitations. (Tr. 33). Further, despite Schlager's allegation that she must lie down for two hours in the morning and two hours in the afternoon, her treatment notes show that she denied fatigue repeatedly. (Tr. 34, e.g., 579, 87, 592, 600, 605, 625, 629). Her treatment notes also did not include any mention that she needed to nap for four hours a day, despite other discussion of sleep issues. (Tr. 34).

By citing and explaining these medical records in detail, the ALJ has fully and fairly developed the record. I conclude that Schlager's argument concerning development of the record provides no basis on which to reverse the ALJ's decision.

B.  RFC Determination

Schlager's second argument is that the evidence concerning her fatigue, poor concentration, and seronegative RA contradicts the ALJ's RFC determination. Schlager first argues that the ALJ failed to consider how fibromyalgia and depression caused sleep difficulties, fatigue, and low energy that would make it impossible for her to work full time. Schlager notes that she reported sleep challenges nearly every month during the period of disability. (ECF No. 19 at 9). According to Schlager, the ALJ should have considered that these challenges would have caused her to miss work frequently or take additional breaks during the day, making her incapable of reliable full time work. (Id. at 9-10).

11

The ALJ considered Schlager's sleep challenges, including her claim that she would need to nap for two hours, twice a day. (Tr. 34). As mentioned above, the ALJ rejected this claim based on Schlager's treatment notes. Specifically, Schlager denied fatigue repeatedly, (Tr. 34, e.g., 579, 87, 592, 600, 605, 625, 629), and her treatment notes make no mention her need to sleep during the day. (Tr. 34). The record further demonstrates that the severity of Schlager's insomnia varied significantly and appeared to decrease over time. Schlager reported insomnia on nine doctors' visits from February to December 2015, but denied insomnia on seven visits. (Tr. 580, 588, 593, 601, 606, 616, 620, 625, 634, 640, 645, 650, 655, 668, 674, 679, 689). On August 3, 2015 and August 31, 2015, Schlager reported no insomnia, but that she slept less than four hours a night, or less than two hours a night, respectively, because of pain. (Tr. 625, 634). On October 8, 2015, Schlager also reported sleeping less than four hours a night. (Tr. 645). Towards the end of the year Schlager reported sleeping less than six hours a night, specifically on October 22, November 4, November 18, and December 29. (Tr. 655, 668, 679, 689). The ALJ properly considered this evidence when creating Schlager's RFC, and her decision on this issue is supported by substantial evidence.

Second, Schlager argues that the ALJ improperly dismissed her claim that impaired concentration would prevent her from working. According to Schlager,

12

the ALJ determined that she could concentrate sufficiently because she "recently finished watching a series of an hour-long dramatic program with several seasons." (ECF No. 19 at 10 (citing Tr. 19)). Based in part on that information, the ALJ found that Schlager could "maintain attention for more than 30 minutes at a time." (Id.) The ALJ cited other evidence supporting this conclusion, however. Specifically, the ALJ noted that Schlager performs household chores that require some attention, such as laundry and paying bills. (Tr. at 19). The ALJ also cited treatment notes demonstrating normal attention span and fair concentration, and mental tests that demonstrated adequate attention and concentration. (Tr. 19-20, 60, 64, 247, 387-88). These other pieces of evidence support the ALJ's determination on their own. Additionally, the ALJ accounted for Schlager's moderate limitations in concentration by limiting her to simple and routine tasks (Tr. 19-21). As a result, the ALJ properly considered Schlager's complaint that she lacked attention, and his decision on this issue is supported by substantial evidence.

Finally, Schlager argues that no substantial evidence supports the ALJ's finding that she is capable of "frequent" or even occasional "use of the bilateral upper extremities for handling and fingering," as is stated in the RFC. (ECF No. 19 at 10). According to Schlager, the medical evidence indicates that she has a severe form of RA, specifically seronegative RA. (Id. at 11). She cites evidence

13

from Dr. Sheeran, noting joint tenderness, possible swelling and pain on range of motion on October 3, 2016. (Id. at 11; Tr. 483). Dr. Sheeran also noted swelling with tenderness, decreased grip strength, and bilateral wrist swelling, tenderness, and pain on range of motion on November 1, 2016. (Id. at 11; Tr. 488).

The ALJ determined that Schlager's seronegative RA was not as limiting as she claimed. (Tr. 25-26). In supporting this determination, the ALJ cited other medical evidence that found only slightly reduced upper extremity strength, normal strength findings, normal wrist range of motion, and the ability to oppose her fingers. (Tr. 21, 25-26, 394, 480, 484, 488, 523, 526, 601, 616, 680, 690). Furthermore, "frequent handling and fingering" of files represents a limitation that has been previously assessed for mild seronegative RA in the disability context. See, e.g., Romanus v. Berryhill, No. CV 1:17-14-DCN-SVH, 2017 WL 9289434, at *6, 9, 15 (D.S.C. Sept. 25, 2017), report and recommendation adopted, No. 1:17-CV-00014-DCN, 2017 WL 5957737 (D.S.C. Nov. 30, 2017); Gomez v. Astrue, No. 1:10-CV-01993-SKO, 2012 WL 947235, at *8-9 (E.D. Cal. Mar. 20, 2012); Romanus v. Berryhill, No. 1:17-CV-00014-DCN, 2017 WL 5957737, at *2 (D.S.C. Nov. 30, 2017). This limitation may seem unaccommodating, namely for its use of the word "frequent." However, I conclude that the ALJ based this limitation on the substantial evidence cited above.

## Conclusion

Because substantial evidence on the record supports the ALJ's decision, I must affirm the Commissioner's decision.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Schlager's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 26th day of March, 2019.